FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★   NOV 20 2018   ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
LANDON CASSIDY,

                              Plaintiff,

             -against-

UNITED STATES OF AMERICA, DEPARTMENT
OF TRANSPORTATION and UNITED STATES
MERCHANT MARINE ACADEMY,

                              Defendants.
------------------------------------------------------------------X

**OPINION AND ORDER**
17-cv-4187 (SJF)(AYS)

FEUERSTEIN, District Judge:

I.      Introduction

        On July 14, 2017, plaintiff Landon Cassidy ("plaintiff") commenced this action against

defendants United States of America, Department of Transportation ("DOT") and the United

States Merchant Marine Academy ("USMMA" or the "Academy") (collectively, "defendants"),

pursuant to, *inter alia*, the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, *et seq.*,

seeking judicial review of defendants' decision finding plaintiff guilty of certain disciplinary

charges and disenrolling him from the USMMA (the "Disenrollment Decision") or, in the

alternative, to compel defendants to permit plaintiff to appeal defendants' Disenrollment

Decision. Pending before the Court is defendants' motion pursuant to Rules 12(b)(1) and 12(c)

of the Federal Rules of Civil Procedure seeking to dismiss plaintiff's APA claims for lack of

subject matter jurisdiction and for judgment on the pleadings dismissing plaintiff's claims for

failure to state a claim for relief. For the reasons set forth below, defendants' motion is granted

in part and denied in part.

II.    Background

   A.    Factual Background[1]

The USMMA is owned, operated and/or maintained by the DOT, which is an agency of the United States. (Complaint ["Compl."], ¶¶ 7-8).

Plaintiff was appointed a midshipman at the USMMA on or about June 28, 2016, into the class of 2020. (Compl., ¶ 6 and Ex. 8). Apart from the disciplinary proceedings underlying the instant action, plaintiff was not otherwise subject to discipline at the Academy. (*Id.*).

Two classmates of plaintiff, C.B. and C.C. (collectively, the "Complainants"), who were also midshipmen at the USMMA, were complainants in the underlying disciplinary proceedings, (Compl., ¶ 9), and another classmate, E.C., who was also a midshipman at the USMMA, was a witness in the underlying disciplinary proceedings. (*Id.*, ¶ 10).

Rear Admiral James A. Helis ("Admiral Helis"), who was the Superintendent of the USMMA at all relevant times, presided over the underlying disciplinary proceedings. (Compl., ¶ 11). Ilene Kreitzer ("Kreitzer"), counsel to the USMMA, acted as the attorney for the Academy at all relevant times, including during the underlying disciplinary proceedings. (*Id.*, ¶ 12).

On or about April 24, 2017, the USMMA brought the following misconduct charges against plaintiff ("the Charges"): (1) violations of "Superintendent Instruction 2016-02, Sexual Assault, Dating Violence, Domestic Violence, Stalking, Prevention Education, and Response Policy," (the "Superintendent's Instruction"), alleging that plaintiff committed a sexual assault with respect to the Complainants on or about January 24, 2017, February 5, 2017 and April 1,

---

[1] The factual allegations in the amended complaint are assumed to be true for purposes of this motion, "unless contradicted by more specific allegations or documentary evidence," *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011), and do not constitute findings of fact by the Court.

2017; and (2) violations of "Section 243 of the Midshipman Regulations, Sexual Misconduct," alleging that plaintiff "engag[ed] in actions of a sexual nature that would reasonably excite or satisfy the sexual desires of the actor (such as kissing, touching, sexual intercourse of any sort, sexually motivated nudity, and indecent exposure)," also with respect to the Complainants on the same dates. (Compl., ¶¶ 13-14 and Ex. 1). Plaintiff denies the Charges. (*Id.*, ¶ 14; *see also* Plaintiff's Declaration ["Plf. Decl."] at 1).

The "Notice of Superintendent's Disciplinary Hearing" (the "Hearing Notice") received by plaintiff on April 24, 2017, indicates, *inter alia*, that a hearing was scheduled for May 1, 2017, *i.e.*, seven (7) days later, and that Kreitzer would be present at the hearing on behalf of the USMMA "to provide due process guidance." (Compl., Ex. 1 at 1). In addition, the Hearing Notice identified eight (8) witnesses that the USMMA might call at the hearing and advised plaintiff that he had the following rights prior to and at the hearing: (i) to receive a copy of the investigatory file, subject to his acknowledgement and signature of a Confidentiality/Non-Disclosure Agreement, and any other documents that the Superintendent would consider in making his decision; (ii) "[t]o seek advice and assistance of legal counsel in the preparation of [his] case at [his] own expense[,]" and to have counsel present at the hearing "to consult and advise [him], but [who] may not otherwise participate in the proceedings[;]" (iii) to request a faculty or staff member of the Academy to act as an advisor, or to have the Superintendent appoint one on request; (iv) "[t]o be present during the entire hearing, except for the Superintendent's deliberations[;]" (v) to make opening and closing statements; (vi) to present evidence during each phase of the hearing, provided he notify the Superintendent's Office in writing no later than 10:00 a.m. the following day, *i.e.*, April 28, 2017, of the identity of his

witnesses[2]; (vii) to question all witnesses except the Complainants and two (2) of the other witnesses identified therein, although he could submit written questions for those two (2) witnesses to the Superintendent for his review and use if relevant to the proceedings; and (viii) to appeal a decision of disenrollment. (*Id.*, Ex. 1 at 2-3). The Hearing Notice further indicates that the "Procedures for Superintendent's Disciplinary Hearing in the Case of Sexual Assault/Harassment" ("Hearing Procedures") were attached thereto.[3] (*Id.* at 3).

Plaintiff alleges that the investigator, Jeffrey Thomas ("Thomas"), of the USMMA's Department of Public Safety, "acted aggressively and predisposed to proving [his] guilt." (Compl., ¶ 14; Plf. Decl., ¶ 2). According to plaintiff, Thomas "interviewed [him] alone, without another witness," and his interview notes, which omitted plaintiff's version of events, were used against him at the hearing. (Compl., ¶ 14; Plf. Decl., ¶ 2).

On or about May 1, 2017, Admiral Helis held a hearing with respect to the Charges against plaintiff, which was conducted in two (2) phases: "Phase I," or the "determination stage" of the disciplinary process, to determine whether the alleged violation(s) occurred; and "Phase II," or the "sanction stage" or "penalty phase" of the disciplinary process. (Compl., ¶¶ 15-16; Ex. 1 at 3, ¶ 6; and Ex. 4 at 5, ¶ 6(f)(v)). The Hearing Procedures provide, in pertinent part, that "Phase I will deal exclusively with the determination of the facts pertaining to the case at hand, the objective evaluation of those facts and a determination of whether the charge(s) have been proven by a preponderance of the evidence." (*Id.*, Ex. 5, § III(A)(1)).

---

[2] The Hearing Notice further provides that the USMMA "shall make reasonable efforts to insure the attendance of the witnesses identified by [plaintiff] who are enrolled at or employed by [it]," but that plaintiff was solely responsible for the appearance of other witnesses. (Compl., Ex. 1).

[3] Although the Hearing Notice annexed as Exhibit 1 to the complaint does not include any attachment, a copy of the Hearing Procedures is annexed as Exhibit 5 to the complaint.

The Superintendent's Instruction also provides certain procedures applicable at the hearing, including certain rights held by both the accused and the victim(s) throughout the disciplinary proceedings. (Compl., Ex. 4 at 5, ¶ 6(f)). Specifically, the Superintendent's Instruction provides, in pertinent part, that "[t]hroughout the disciplinary proceedings, the accused and the victim will have . . . [t]he right to exclude prior sexual history or past mental health history from admittance in Phase I (determination stage) of the disciplinary process. Past sexual violence findings may be admissible in Phase II (sanction stage) of the disciplinary process[.]" (*Id.*, ¶ 6(f)(v)). According to plaintiff, during Phase I of the hearing, the USMMA called E.C. as a witness, who "was not a complainant and had no personal knowledge of the allegations underlying the Charges[,] . . . [and] testified solely about [his] alleged sexual history with her, which she claimed was unwanted." (Plf. Decl., ¶ 3; *see also* Compl., ¶ 20). Plaintiff further avers that he never understood his alleged sexual history with E.C. to be unwanted, and he "stopped any advancement when asked to me [sic] to stop. . . ." (Plf. Decl., ¶ 3; *see also* Compl., ¶ 20).

Plaintiff was not represented by counsel at the hearing. (Compl., ¶ 19; Plf. Decl., ¶ 4). According to plaintiff, Dr. Lori Townsend ("Townsend"), a layperson and staff member of the Academy, served as his advisor at the hearing, and she advised him not to bring an attorney "because it would make him 'look guilty.'" (Compl., ¶ 19; *see also* Plf. Decl., ¶ 4 and Compl., Ex. 3). Plaintiff also avers that although he made opening and closing statements at the hearing, Townsend advised him "not to testify on [his] own behalf, because the hearing 'went well' without [his] testimony." (Plf. Decl., ¶ 4; *see also* Compl., ¶ 20). Plaintiff called no witnesses during Phase I of the hearing. (Compl., Ex. 3 at 1). In addition, plaintiff asserts that "[d]uring the

sentencing phase of the hearing, [he] was told [he] had no 'standing' to testify on [his] own behalf, and as a consequence [he] did not." (Plf. Decl., ¶ 4; *see also* Compl., ¶ 20).

On the same day as the hearing, Admiral Helis issued a written decision, *i.e.*, the Disenrollment Decision, finding that plaintiff committed the violations set forth in the Charges based upon his review of the investigatory file; plaintiff's "voluntary opening and closing statements," which had been provided to him both orally and in writing; plaintiff's responses to his questions; and the testimony of the six (6) witnesses called by the USMMA during Phase I of the hearing, including the two (2) Complainants. (Compl., Ex. 3 at 1). Admiral Helis further determined to disenroll plaintiff from the Academy based upon his review of plaintiff's academic file and personnel jacket; the "additional information [plaintiff] provided during Phase II of the hearing, including the voluntary statement [he] provided[;]" the written statement of one (1) witness; the oral testimony of two (2) witnesses; and plaintiff's responses to Admiral Helis's questions.[4] (*Id.* at 2).

The Disenrollment Decision provides, in relevant part,

> "In accordance with Article 1011 of the Midshipman Regulations, you may appeal this decision to the Maritime Administrator whose decision will be final. You must notify this office within 24 hours after receipt of this written Decision of your intent to appeal, and you must submit your appeal in writing to this office, via the Commandant of Midshipmen, no later than seven days after receipt of this letter. You may seek the advice and assistance of legal counsel (at your own expense) or any Academy faculty or staff member . . . to assist you in the preparation of your appeal.
>
> Should you elect to appeal, you will remain enrolled as a student at the Academy during the pendency of your appeal.

---

[4] Plaintiff's conclusory allegations, made "upon information and belief," that he would not have been found in violation of the Charges "but for the inclusion of Witness E.C.'s prohibited testimony during Phase I of the Hearing," and that "the investigator looking into the Charges gave Admiral Helis ex parte updates and information about the case, which biased Admiral Helis against Plaintiff and predisposed him to rule against Plaintiff[,]" (Compl., ¶ 23), are not entitled to the assumption of truth, *see Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), particularly since they are not accompanied by a statement of the facts upon which the belief is founded sufficient to "make the inference of culpability plausible." *Citizens United v. Schneiderman*, 882 F.3d 374, 384-85 (2d Cir. 2018).

If you do not elect to appeal the disenrollment action, you shall proceed immediately with checkout procedures. Please contact the Commandant to commence those procedures."

(Compl., Ex. 3).

On or about May 2, 2017, *i.e.*, the day after the hearing, plaintiff timely filed a request to appeal the Disenrollment Decision ("Appeal Request"). (Compl., ¶ 24 and Ex. 6). Specifically, plaintiff signed a form directed to the Superintendent which provided him with two (2) options: (i) to "accept the decision of the Superintendent, and waive [his] right to appeal[;]" or (ii) to "request to appeal the Superintendent's Decision and will submit an appeal to the Maritime Administrator in accordance with Article 1011 of the Midshipman Regulations." (*Id.*, Ex. 6). Plaintiff marked an "X" next to the latter option and signed and dated the form.

However, the following day, *i.e.*, on or about May 3, 2017, plaintiff made a handwritten notation on the Appeal Request, indicating, "I have decided to withdraw my appeal," which he then submitted to the USMMA. (Compl., ¶ 25 and Ex. 7).

On or about May 4, 2017, the USMMA formally disenrolled plaintiff. (Compl., ¶ 26 and Ex. 8).

On or about May 12, 2017, Thomas sent plaintiff a "Bar Notice," *inter alia*, notifying him: (i) that he was barred from entering USMMA "facilities and grounds without first obtaining prior approval from [Thomas's office];" (ii) that the bar was "effective immediately and will remain in place indefinitely;" and (iii) that if he re-enters the USMMA or is "found within the limits of the Academy grounds, [he] will be subject to detention and/or arrest by the appropriate enforcement authority." (Compl., Ex. 9).

On or about May 15, 2017, *i.e.*, approximately two (2) weeks after the Disenrollment Decision was issued and eleven (11) days after he was formally disenrolled from the Academy,

plaintiff hired the law firm of Tully Rinckey, PLLC to represent him in this matter. (Compl., ¶ 28). The following day, Sean Timmons, Esq. ("Timmons"), a partner at that firm, sent Kreitzer an email requesting "a reasonable two week extension of time to file an appeal on [plaintiff's] behalf . . . [and] production of all relevant and pertinent documents related to this case." (*Id.*, Ex. 10).

On or about May 22, 2017, Timmons submitted a sworn declaration by plaintiff, dated May 19, 2017, to the USMMA, *inter alia*, explaining his decision to withdraw his initial Appeal Request. (*See* Compl., ¶ 30). In the declaration, plaintiff states, *inter alia*,

> ". . . I was under tremendous psychological pain and torment immediately after the hearing on 1 May 2017 because of my mother [sic] cancer removal surgical procedure.[5] A couple of days after confirming she made it through her procedure alive, I suddenly against my free will withdrew my appeal because I was under intense pressure of duress and coercion to leave from fellow midshipmen and staff at USMMA. The most coercive acts I experienced causing me duress occurred primarily from the superintendent Adm. James Helis. The actions that occurred between myself and [redacted] were rapidly spread around campus by a midshipman by the name of [redacted] who had prior relations with [redacted] and was a member of the football team. He spread malicious lies around . . . implying I was guilty of criminal sexual assault with his football buddies. I believe he spread these horrific lies and grossly defamatory insults because of his rageful jealously [sic] of my consensual relations with [redacted]. . . .
>
> The night that my situation occurred with [redacted] occurred [sic] (April 1), an upperclass [sic] midshipman named [redacted] came to my room, under his own discretion. He was aggressive and threatening to myself saying he 'wanted to rip my [expletive] head off.' He entered my room and closed the door, with just himself in the room. . . .
>
> Through an outside source and friend of [redacted] and myself . . . he told me that [redacted] called [redacted] when she heard that I was going to appeal the decision and that [redacted] told [redacted] 'Landon [plaintiff] is trying to appeal and we can't let that happen.' [Redacted] was clearly going to do anything she could in order to see me gone immediately. . . .

---

[5] In plaintiff's "Supplemental Sworn Declaration," dated July 14, 2017, attached to the complaint, plaintiff asserts, *inter alia*, that his mother was diagnosed with breast cancer on March 24, 2017; had double-mastectomy surgery on the day of the hearing, *i.e.*, May 1, 2017, and was released from the hospital the following day. (Plf. Decl., ¶ 5).

During my mast, I presented Adm. Helis with my heartfelt sorrowful apology letters for the complainants. He refused to acknowledge them and said he couldn't take them and that he would 'take it under consideration' and that was all that was said regarding my apology letters. The following morning I gave [redacted] letter in an envelope to her roommate and placed it on her desk, and gave [redacted] letter in an envelope to a close friend of her [redacted], so that these people could give the complainants my letters. I was summoned to the Superintendent's office that same day, on May 2nd at 1615, for a meeting. . . . He informed me that I directly violated his orders regarding the letters. I was advised by Mr. Thomas to have no contact with either individual but was given no official letter of such (at the end of Mr. Thomas's report is my 'advised to have no contact with' order, but I was not given the report until April 24th and was given no other piece of paper about the no contact order). He said he was 'Beyond disappointed, I'm actually mad at you now.' He put further restrictions on me, such as restriction to my barracks, the mess hall, classes, gym, and medical services. I believe that he gave me these excessive and burdensome constraints in order to cause me extreme discomfort, to the point of wanting to leave on my own accord, because as shown prior, none of my behavior was aggressive and neither complainant was in danger. He also extended his so called unofficial 'no contact order' to all individuals and witnesses involved in the case . . . . If I violated these constraints or spoke to any individuals under the no contact he would 'suspend me immediately from the Academy, which means sending you home before your appeal is finished[.]' He also said that he could 'have me on a plane within hours headed home'. Adm. Helis's demeanor was excessively hostile, belligerent, abrasive, pointlessly antagonistic and wholly degrading towards myself. He was clearly trying to scare and threaten me into withdrawing my appeal so that my case would not go any further and so that my case would not get higher up the chain of command, which could cause possible ramifications for himself. I withdrew my appeal the following morning."

(Compl., Ex. 11). Plaintiff alleges that he was "[f]irmly in the psychological grip" of the circumstances set forth in the above declaration when he withdrew his appeal, and that he would not have withdrawn his appeal but for those circumstances, particularly "the overwhelming stress and duress [he] faced, including retaliation by Admiral Helis." (*Id.*, ¶¶ 34-35, 37).

On or about May 24, 2017, Kreitzer sent Timmons an email indicating, in relevant part, that upon consideration of plaintiff's declaration, the USMMA concluded that plaintiff "has not established that he was under duress from any Academy official when he withdrew his appeal[,]" and, thus, would not accept a late appeal from him. (Compl., Ex. 12). The email further provided,

*inter alia*, "The Superintendent's decision constitutes final agency action and we deem this matter closed." (*Id.*).

B.    Procedural History

On July 14, 2017, plaintiff commenced this action against defendants pursuant to, *inter alia*, the APA seeking judicial review of defendants' Disenrollment Decision or, in the alternative, to compel defendants to permit plaintiff to appeal the Disenrollment Decision (Count I of the complaint). Specifically, plaintiff alleges that defendants' "manner of conducting the disciplinary hearing and/or the determination that Plaintiff committed the charged conduct," and their denial of plaintiff's right to an appeal, "violated the Academy's own rules and procedures[;] . . . was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; was contrary to the Due Process Clause of the Fifth Amendment; and/or was in excess of statutory jurisdiction, authority, or limitations." (Compl., ¶¶ 44-45). Plaintiff seeks to set aside the Disenrollment Decision or, in the alternative, to compel defendants to permit him to appeal the Disenrollment Decision. (*Id.*, ¶¶ 46- 47).

The complaint also asserts causes of action for violations of plaintiff's Fifth Amendment procedural and substantive due process rights (Counts II and III of the complaint, respectively). Plaintiff alleges, *inter alia*, (i) that he "has property and liberty rights in his education and in the degree, license, and official commission he was seeking, and all other rights and benefits granted to midshipman enrolled at the Academy," (Compl., ¶¶ 49, 57); and (ii) that defendants deprived him of those property and liberty rights by "improperly" disenrolling him, denying him a right to appeal the disenrollment and "precluding [him] from continuing his course of study at the Academy, forever cutting off [his] ability to enjoy the rights and benefits of enrolled midshipman

at the Academy." (*Id.*, ¶¶ 50, 58). With respect to his procedural due process claim, plaintiff further alleges: (i) that the deprivation of his property and liberty rights occurred without due process insofar as defendants purportedly failed "to afford [him] a meaningful opportunity to properly oppose the charges against him and appeal the disenrollment decision[;] . . . to follow the normal procedures to safeguard the rights of Plaintiff and treated [him] in a manner that was inconsistent with the manner in which they are obligated to handle midshipmen[;] . . . [and] to comply with their own procedures relating to the conduct of [his] hearing and his right to an appeal, including but not limited to the procedures set forth in the Superintendent's Instruction, [the Hearing Procedures] and/or the Midshipman Regulations,"(*id.*, ¶¶ 51-53); and (ii) that defendants' "decisions to disenroll [him] and to deny his right to appeal the decision were not careful and deliberate decisions." (*Id.*, ¶ 54). Plaintiff seeks declaratory and injunctive relief with respect to his procedural due process claim. (*Id.*, ¶ 55).

With respect to his substantive due process claim, plaintiff further alleges, *inter alia*, (i) that defendants' "conduct was in violation of the Academy's own rules and regulations, was arbitrary and capricious and did not involve the exercise of proper judgment[,]" (Compl., ¶ 59); (ii) that, "[u]pon information and belief, Defendants' . . . conduct was motivated by bad faith or ill will unrelated to Plaintiff's guilt or innocence with respect to the charged conduct[,]" (*id.*, ¶ 60); and (iii) that, "[u]pon information and belief, the Defendants deliberately and prejudicially assumed Plaintiff's guilt, failed to follow their own procedures, rushed to judgement [sic], were intentionally dismissive of Plaintiff's statements and rights, and then over zealously punished Plaintiff to serve political purposes to deflect attention from the Academy's ongoing challenges related to its widely published long-term Accreditation deficiencies and 'Sea Year' public

debacle." (*Id.*). Plaintiff seeks "equitable and injunctive relief, and compensatory and punitive damages" with respect to his substantive due process claim. (*Id.*, ¶ 62).

Defendants now move pursuant to Rules 12(b)(1) and 12(c) of the Federal Rules of Civil Procedure to dismiss plaintiff's APA claims for lack of subject matter jurisdiction and for judgment on the pleadings dismissing plaintiff's claims for failure to state a claim for relief.

III.    Discussion

A.  Waiver

Contrary to plaintiff's unsupported contention, defendants did not "waive[] pre-answer defenses when, on October 4, 2017, they filed the Answer instead of making a pre-answer motion to dismiss for failure to state a claim under FRCP [sic] 12(b)(6)." (Plf. Opp. at 6, 13). As set forth more fully below, the defense of lack of subject matter jurisdiction is not waivable. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.") Although Rule 12(b) of the Federal Rules of Civil Procedure provides, in relevant part, that a motion asserting any of the defenses designated therein, including failure to state a claim upon which relief can be granted, "must be made before pleading if a responsive pleading is allowed[,]" Fed. R. Civ. P. 12(b), Rule 12(h)(2) of the Federal Rules of Civil Procedure provides, in pertinent part, that the defense of failure to state a claim upon which relief can be granted "may be raised: (A) in any pleading allowed or ordered under Rule 7(a); (B) by a motion under Rule 12(c); or (C) at trial." Fed. R. Civ. P. 12(h)(2). "Thus, the defense of failure to state a claim is not waivable." *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001). Accordingly, plaintiff's waiver argument is without merit.

B.  Fed. R. Civ. P. 12(b)(1)

1.  Standard of Review

"Federal courts are courts of limited jurisdiction," *Gunn v. Minton*, 568 U.S. 251, 256, 133 S. Ct. 1059, 185 L. Ed. 2d 72 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994)); *see also Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 376, 132 S. Ct. 740, 181 L. Ed. 2d 881 (2012), and may not preside over cases absent subject matter jurisdiction. *See Lightfoot v. Cendant Mortg. Corp.*, --- U.S. ---, 137 S. Ct. 553, 560, 196 L. Ed. 2d 493 (2017) ("[A] court's subject-matter jurisdiction defines its power to hear cases."); *Kokkonen*, 511 U.S. at 377, 114 S. Ct. 1673 (holding that federal courts "possess only that power authorized by Constitution and statute . . . .")  Lack of subject matter jurisdiction cannot be waived or forfeited, and may be raised at any time by a party or by the court *sua sponte*. *Gonzalez v. Thaler*, 565 U.S. 134, 141, 132 S. Ct. 641, 181 L. Ed. 2d 619 (2012); *see also Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153, 133 S. Ct. 817, 184 L. Ed. 2d 627 (2013) ("Objections to a tribunal's jurisdiction can be raised at any time, even by a party that once conceded the tribunal's subject-matter jurisdiction over the controversy."); *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434, 131 S. Ct. 1197, 179 L. Ed. 2d 159 (2011) ("[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press. . . . Objections to subject-matter jurisdiction . . . may be raised at any time.")  If a court lacks subject matter jurisdiction, it must dismiss the action.  See Fed. R. Civ. P. 12(h)(3); *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514, 126 S. Ct. 1235, 163 L. Ed. 2d 1097 (2006).

"In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014); *see also Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) ("In reviewing a facial attack to the court's jurisdiction, [courts] draw all facts– which [are] assume[d] to be true unless contradicted by more specific allegations or documentary evidence– from the complaint and from the exhibits attached thereto.") However, "where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings[.]" *Tandon*, 752 F.3d at 243 (quotations, alterations and citations omitted); *see also Fountain v. Karim*, 838 F.3d 129, 134 (2d Cir. 2016) ("The court may resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits, and if necessary, holding an evidentiary hearing." (quotations, alterations and citation omitted)). "In that case, the party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Tandon*, 752 F.3d at 243 (quotations and citation omitted); *see also Fountain*, 838 F.3d at 134 ("A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." (quotations and citation omitted)).

## 2. Exhaustion

Defendants contend, *inter alia*, that "[t]he Academy's findings regarding the charges of Plaintiff's sexual misconduct and decision to disenroll him from the Academy after a full hearing are not subject to review under the APA because Plaintiff abandoned the required appeals process."

(Defendants' Memorandum of Law in Support of Motion to Dismiss ["Def. Mem."] at 6 (citing *Darby v. Cisneros*, 509 U.S. 137, 113 S. Ct. 2539, 125 L. Ed. 2d 113 (1993)).

"Under § 10(a) of the APA, '[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, *is entitled to judicial review thereof.*'" *Darby*, 509 U.S. at 146, 113 S. Ct. 2539 (brackets and emphasis in original) (quoting 5 U.S.C. § 702). "Although § 10(a) provides the general right to judicial review of agency actions under the APA, § 10(c) establishes when such review is available." *Id.*

"[W]ith respect to actions brought under the APA, Congress effectively codified the doctrine of exhaustion of administrative remedies in § 10(c)[,]" *Darby*, 509 U.S. at 153, 113 S. Ct. 2539, which provides:

> "Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action. Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or, *unless the agency otherwise requires by rule* and provides that the action meanwhile is inoperative, for an appeal to superior agency authority."

5 U.S.C. § 704 (emphasis added). Thus, "[w]hen an aggrieved party has exhausted all administrative remedies expressly prescribed by statute or agency rule, the agency action is 'final for the purposes of this section' and therefore 'subject to judicial review' under the first sentence." *Darby*, 509 U.S. at 146, 113 S. Ct. 2539. However, by its terms, Section 10(c) of the APA "has limited the availability of the doctrine of exhaustion of administrative remedies to that which the statute or rule clearly mandates." *Id.* In other words, "the exhaustion doctrine continues to exist under the APA to the extent that it is required by statute or by agency rule as a prerequisite to

judicial review." *Id.* at 153, 113 S. Ct. 2539; *see also Air Espana v. Brien*, 165 F.3d 148, 151 (2d Cir. 1999) ("Under the APA, . . . courts are not free to impose an exhaustion requirement unless the specific statutory scheme at issue imposes such a requirement." (quotations and citation omitted)).

As explained by the Supreme Court in *Darby*,

> "The purpose of § 10(c) was to permit agencies to require an appeal to 'superior agency authority' before an examiner's initial decision became final. . . Agencies may avoid the finality of an initial decision, first, by adopting a rule that an agency appeal be taken before judicial review is available, and, second, by providing that the initial decision would be 'inoperative' pending appeal. Otherwise, the initial decision becomes final and the aggrieved party is entitled to judicial review."

*Darby*, 509 U.S. at 152, 113 S. Ct. 2539. Accordingly, "where the APA applies, an appeal to 'superior agency authority' is a prerequisite to judicial review *only* when expressly required by statute or when an agency rule requires appeal before review and the administrative action is made inoperative pending that review." *Id.* at 154, 113 S. Ct. 2539 (emphasis in original); *see also Brezler v. Mills*, 220 F. Supp. 3d 303, 322 (E.D.N.Y. 2016) ("[U]nder *Darby*, a plaintiff need not seek further review of a final action within the agency before filing suit, unless a specific statute or rule expressly requires otherwise.")

Defendants do not point to any statute expressly requiring exhaustion, or an appeal to "superior agency authority," as a prerequisite to judicial review; instead relying solely upon Article 1011 of the Midshipman Regulations. Article 1011 of the Midshipman Regulations[6], entitled "Appeals to the Maritime Administrator," provides, in relevant part:

---

[6] "[C]ourts may take judicial notice of the regulations of federal administrative agencies." *United States v. Bradford*, 160 F.2d 729, 731 (2d Cir. 1947); *see also Caha v. U.S.*, 152 U.S. 211, 221-22, 14 S. Ct. 513, 38 L. Ed. 415 (1894) ("[W]herever, by the express language of any act of congress, power is intrusted [sic] to either of the principal departments of government to prescribe rules and regulations for the transaction of business in which the public is interested, and in respect to which they have a right to participate, and by which they are to be controlled, the rules and regulations prescribed in pursuance of such authority become a mass of that body of public records of which the courts take judicial notice."); *Frith v. Hill*, No. 07-cv-5899, 2009 WL 3073716, at * 16 n. 10 (S.D.N.Y. Sept. 23,

a. In the event the Superintendent's decision is to disenroll the Midshipman, the Midshipman *may* make an appeal to the Maritime Administrator whose decision will be final. Such appeal will be submitted in writing to the Superintendent, via the Commandant of Midshipmen, no later than seven days after the Superintendent's action. <u>Midshipmen are *eligible* to appeal to the Maritime Administrator only when facing disenrollment action in disciplinary cases</u>. If the Midshipman seeks such an appeal, that Midshipman is entitled to continue the course of instruction at the Academy until the results of the appeal are made known as long as the subject Midshipman lives within the Regimental guidelines. If the Midshipman does not appeal the Superintendent's disenrollment action, the Midshipman is to proceed immediately with checkout procedures.

(Declaration of Megan J. Freismuth, AUSA, Ex. A) (italics added; underlining in original).

Contrary to defendants' contention, nothing in the language set forth in Article 1011 of the Midshipman Regulations can be read to require exhaustion, *i.e.*, an appeal "to superior agency authority," before judicial review is available. Indeed, the italicized language in that regulation indicates that an appeal to the Maritime Administrator is permissive; not a mandatory prerequisite to judicial review. *See, e.g. Darby*, 509 U.S. at 141, 113 S. Ct. 2539 (finding that Section 10(c) of the APA did not require exhaustion where the Housing and Urban Development Department regulation at issue provided that the parties "may request" administrative review of the decision of a hearing officer, and contained no language explicitly indicating that such review was a prerequisite to judicial review); *Lin v. McElroy*, No. 96-cv-5933, 1996 WL 546881, at * 2 (S.D.N.Y. Sept. 26, 1996) (finding that the INS regulations at issue, providing that the parties "may appeal" to the Board of Immigration Appeals from any determination of the Immigration Judge, "permit parties to seek wholly discretionary review within the agency, but do not require this as a prerequisite to judicial review."); *cf. S.E.C. ex rel. Glotzer v. Martha Stewart, Living Omnimedia, Inc. ("In re S.E.C. ex rel. Glotzer")*, 374 F.3d 184, 188-89 (2d Cir. 2004) (finding that an SEC

---

2009) ("[J]udicial notice may be taken of the rules, regulations and orders of administrative agencies issued pursuant to their delegated authority." (quotations and citation omitted)).

regulation providing that "'[a]ny person aggrieved' by the General Counsel's refusal to authorize compliance with a subpoena must, as 'a prerequisite to the seeking of judicial review,' first file a petition with the SEC for review of such decision[,]" plainly required exhaustion of administrative remedies before bringing an action pursuant to the APA in federal court (citing 17 C.F.R. §§ 201.430(a), (c))); *Ciba-Geigy Corp. v. Sidamon-Eristoff*, 3 F.3d 40, 45 and n. 4 (2d Cir. 1993) (distinguishing *Darby* on the basis that the EPA regulation at issue provided that "[t]his informal appeal is, under 5 U.S.C. 704, a prerequisite to seeking judicial review of EPA action in denying a request for modification, revocation and reissuance, or termination[,]" 40 C.F.R. § 124.5, and, thus, created an express exhaustion requirement). Since an appeal to the Maritime Administrator is not mandatory under Article 1011 of the Midshipman Regulations, or any other statute or agency regulation, the Superintendent's Disenrollment Decision constitutes final agency action for purposes of the APA, for which plaintiff is entitled to judicial review, and this Court cannot require him to file an appeal with the Maritime Administrator before considering his claims.

Indeed, other than the one (1) general citation to *Darby*, set forth above, which does not even contain any citation to a specific page number therein, defendants cite to only one (1) other case, *Phillips v. United States*, 910 F. Supp. 101 (E.D.N.Y. 1996), also without citation to a specific page number therein, in their original motion papers in purported support of their contention that plaintiff's failure to exhaust his administrative remedies precludes judicial review. However, as noted by another court, *Phillips* did not

> "discuss, distinguish, provide a military exception to, or even cite *Darby*. Instead the court[] relied completely on the Second Circuit's decision in *Guitard* [*v. U.S. Secretary of* Navy, 967 F.2d 737 (2d Cir. 1992)] which, . . . was at least altered by the Supreme Court's decision in *Darby*. In fact, since *Phillips* . . . other courts within the Second Circuit have recognized the impact that *Darby* had on the Second Circuit's decision in *Guitard*."

*Crane v. Secretary of Army*, 92 F. Supp. 2d 155, 163 (W.D.N.Y. 2000); *see also Brezler*, 220 F. Supp. 3d at 323-24 ("[T]he plain language of the [APA] and *Darby's* dictate, which governs 'where the APA applies,' 509 U.S. at 154, 113 S. Ct. 2539, are dispositive. The Court will not require plaintiff to exhaust all avenues of administrative review of a final agency decision where Congress and the military have not imposed such a requirement. This holding is in harmony with the weight of post–*Darby* case law finding that there is no 'military exception' to *Darby*. . . . *Guitard* [is] of no moment here because *Darby* and the APA preclude imposition of an exhaustion requirement not found in statute or rule.")

Moreover, contrary to defendants' contention, deference under either *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984), or *Auer v. Robbins*, 519 U.S. 452, 117 S. Ct. 905, 137 L. Ed. 2d 79 (1997), is not warranted in this case. "*Chevron* deference is the deference afforded to an agency's interpretation of a statute it is charged with administering. [] *Auer* deference is the deference [federal courts] afford to an agency's interpretation of its own regulations." *Linares Huarcaya v. Mukasey*, 550 F.3d 224, 229 (2d Cir. 2008) (alterations omitted) (quoting *Edwards v. INS*, 393 F.3d 299, 308 n. 11 (2d Cir. 2004)). Since there is no issue regarding defendants' interpretation of a congressional statute involved in this case, *Chevron* is inapplicable. *See Id.* at 228-29.

"*Auer* requires that an agency's interpretations of its own regulations are [] entitled to deference and are controlling unless plainly erroneous or inconsistent with the regulation." *Linares Huarcaya*, 550 F.3d at 229 (quotations, alterations and citation omitted); *see also Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 155, 132 S. Ct. 2156, 183 L. Ed. 2d 153 (2012) (holding that *Auer* "[d]eference is undoubtedly inappropriate. . . when the agency's interpretation is plainly erroneous or inconsistent with the regulation." (quotations and citation omitted)). *Auer* "deference

is likewise unwarranted when there is reason to suspect that the agency's interpretation does not reflect the agency's fair and considered judgment on the matter in question[,] . . . [such as] when the agency's interpretation conflicts with a prior interpretation[;] . . . or when it appears that the interpretation is nothing more than a convenient litigating position. . . or a *post hoc* rationalization advanced by an agency seeking to defend past agency action against attack[.]" *Christopher*, 567 U.S. at 155, 132 S. Ct. 2156 (quotations and citations omitted). Moreover, "*Auer* deference, . . . 'is warranted only when the language of the regulation is ambiguous.'" *Linares Huarcaya*, 550 F.3d at 229 (quoting *Christensen v. Harris County*, 529 U.S. 576, 588, 120 S. Ct. 1655, 146 L. Ed. 2d 621 (2000)); *accord Halo v. Yale Health Plan, Dir. of Benefits & Records Yale Univ.*, 819 F.3d 42, 53 (2d Cir. 2016).

Since the language of Article 1011 of the Midshipman Regulations is not ambiguous, *i.e.,* it clearly does not require exhaustion of administrative remedies as a prerequisite to judicial review, *Auer* deference is not warranted. *See, e.g. Christensen*, 529 U.S. at 588, 120 S. Ct. 1655 (finding that *Auer* deference was not warranted because the regulation at issue was not ambiguous, since the language of the regulation itself, providing that "[t]he agreement or understanding [between the employer and employee] *may* include other provisions governing the preservation, use, or cashing out of compensatory time so long as these provisions are consistent with [§ 207(o)]," was plainly permissive, not mandatory (emphasis and brackets in original) (quoting 29 C.F.R. § 553.23(a)(2) (1999))). To defer to defendants' position "would be to permit [them], under the guise of interpreting a regulation, to create *de facto* a new regulation."[7]  *Id.*  Accordingly, for

---

[7] Moreover, since the regulation certainly does not provide clear notice that exhaustion of administrative remedies is required as a prerequisite to judicial review, "[t]o defer to the agency's interpretation in this circumstance would seriously undermine the principle that agencies should provide regulated parties fair warning of the conduct a regulation prohibits or requires." *Christopher*, 567 U.S. at 156, 132 S. Ct. 2156 (quotations, alterations and citation omitted). In any event, defendants' interpretation of that regulation as requiring exhaustion prior to judicial review is inconsistent with the plain terms of the language of the regulation, as set forth above.

the reasons set forth above, the branch of defendants' motion seeking dismissal of plaintiff's APA claim seeking judicial review of the Disenrollment Decision for plaintiff's failure to exhaust administrative remedies is denied in its entirety.

### 3. Agency Discretion

Section 701(a)(2) of title 5 of the United States Code provides, "This chapter applies, according to the provisions thereof, except to the extent that-- . . . agency action is committed to agency discretion by law." Accordingly, "[f]inal agency action is not subject to judicial review under the APA to the extent that such action is committed to agency discretion by law." *Sharkey v. Quarantillo*, 541 F.3d 75, 91 (2d Cir. 2008) (quotations and citation omitted); *see also Larson v. United States*, 888 F.3d 578, 587 (2d Cir. 2018) ("APA review is limited to (1) final agency action (2) not committed to agency discretion by law (3) where Congress has not implicitly or explicitly precluded judicial review."); *Vela-Estrada v. Lynch*, 817 F.3d 69, 71 (2d Cir. 2016) ("Under the [APA], judicial review is expressly foreclosed where . . . 'agency action is committed to agency discretion by law.'" (quoting 5 U.S.C. § 701(a))). However, "[t]his restriction applies only in 'those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply.'" *Sharkey*, 541 F.3d at 91 (quoting *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 410, 91 S. Ct. 814, 28 L. Ed. 2d 136 (1971), *abrogated on other grounds*, *Califano v. Sanders*, 430 U.S. 99, 97 S. Ct. 980, 51 L. Ed. 2d 192 (1977)); *see also Vela-Estrada*, 817 F.3d at 71 ("An administrative action is 'committed to agency discretion' where the governing law is 'drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.'" (quoting *Heckler v. Chaney*, 470 U.S. 821, 830, 105 S. Ct. 1649, 84 L. Ed. 2d 714 (1985))). "To determine whether there is 'law to apply' that provides judicially

manageable standards for judging an agency's exercise of discretion, the courts look to the statutory text, the agency's regulations, and informal agency guidance that govern the agency's challenged action." *Salazar v. King*, 822 F.3d 61, 76 (2d Cir. 2016) (quotations and citation omitted); *see also Lunney v. U.S.*, 319 F.3d 550, 558 (2d Cir. 2003) (holding that 5 U.S.C. § 702(a)(2) "requires careful examination of the statute on which the claim of agency illegality is based . . . and requires dismissal where there is no law to apply. . . . The plaintiff therefore must specify some statute or regulation that would limit the [agency's] discretion in th[e] matter [at hand]." (quotations and citations omitted)).

Plaintiff has not specified any law to apply that creates boundaries and requirements for defendants' action relating to previously withdrawn or untimely appeals of disenrollment decisions, and that shows that Congress has not left the decision about such appeals to the discretion of the agency, so as to permit judicial review of his APA claim relating to defendants' refusal to permit him to re-file his previously withdrawn appeal, or to file a late appeal, from the Disenrollment Decision. Due to the lack of meaningful guidance on how defendants' discretion should be applied, defendants' refusal to allow plaintiff to re-file his previously withdrawn appeal, or to file a late appeal, of the Disenrollment Decision is not subject to judicial review under the APA. *See, e.g. Vela-Estrada*, 817 F.3d at 71 (holding that the BIA's decision not to certify an untimely appeal was committed to agency discretion by law and, thus, was not subject to judicial review); *Ahmed v. Cissna*, 327 F. Supp. 3d 650, 672 (S.D.N.Y. 2018) (dismissing the plaintiffs' APA claim where they failed to cite to any statute, regulation, memorandum or other authority that limits the agency's discretion); *Ercole v. LaHood*, No. 07-cv-2049, 2010 WL 1286317, at * 13 (E.D.N.Y. Mar. 30, 2010) ("[A]n APA plaintiff may not obtain review simply by claiming an agency acted in an arbitrary and capricious manner without identifying a statute to guide the

agency's discretion.") Accordingly, the branch of defendants' motion seeking dismissal of plaintiff's APA claim seeking judicial review of defendants' refusal to allow him to re-file his previously withdrawn appeal, or to file a late appeal, of the Disenrollment Decision is granted and that claim is dismissed for lack of subject matter jurisdiction.

### C. Fed. R. Civ. P. 12(c)

#### 1. Standard of Review

"In deciding a Rule 12(c) motion, the same standard as applicable to a motion to dismiss under Rule 12(b)(6) is employed." *See Alcantara v. Bakery & Confectionery Union & Indus. Int'l Pension Fund Pension Plan*, 751 F.3d 71, 75 (2d Cir. 2014); *Hogan v. Fischer*, 738 F.3d 509, 514-15 (2d Cir. 2013). The standard of review on a motion made pursuant to Rule 12(b)(6) or Rule 12(c) of the Federal Rules of Civil Procedure is that a plaintiff plead sufficient facts "to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007); *see also Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010) ("To survive a Rule 12(c) motion, plaintiffs' complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (quotations, alterations and citation omitted)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937.

The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (brackets in original) (quoting

Fed. R. Civ. P. 8(a)(2)). "Determining whether a complaint states a plausible claim for relief will[] . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

"A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937 (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. 1955). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. 544, 127 S. Ct. at 1959.

In deciding a motion pursuant to Rule 12(b)(6) or Rule 12(c), the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Jaffer v. Hirji*, 887 F.3d 111, 114 (2d Cir. 2018); *Kim v. Kimm*, 884 F.3d 98, 102-03 (2d Cir. 2018). However, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. at 679, 129 S. Ct. 1937. "In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.*; *see also Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 317, n. 1 (2d Cir. 2010).

Moreover, "[a] litigant cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory. Those magic words will only make

otherwise unsupported claims plausible when 'the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible.'" *Citizens United*, 882 F.3d at 384-85 (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)); *see also Lankau v. Luxoft Holding, Inc.*, 266 F. Supp. 3d 666, 673 (S.D.N.Y. 2017) ("While a plaintiff may plead facts alleged upon information and belief where the belief is based on factual information that makes the inference of culpability plausible, such allegations must be accompanied by a statement of the facts upon which the belief is founded. . . . The pleadings . . . must contain something more than [] a statement of facts that merely creates a suspicion of a legally cognizable right of action." (quotations, alterations and citations omitted)); *Securities & Exch. Comm'n v. Thompson*, 238 F. Supp. 3d 575, 587-88 (S.D.N.Y. 2017) ("A plaintiff may plead facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant[,] . . . [b]ut, if the Court can infer no more than the mere possibility of misconduct from the factual averments– in other words, if the well-pled allegations of the complaint have not nudged plaintiff's claims across the line from conceivable to plausible– dismissal is appropriate." (quotations, alterations and citations omitted)).

Nonetheless, a plaintiff is not required to plead "specific evidence or extra facts beyond what is needed to make the claim plausible." *Arista Records*, 604 F.3d at 120-1; *accord Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 729-30 (2d Cir. 2013). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679, 129 S. Ct. 1937.

In deciding a motion pursuant to Rule 12(b)(6) or Rule 12(c) of the Federal Rules of Civil Procedure, the Court must limit itself to the facts alleged in the complaint, which are accepted as

true; to any documents attached to the complaint as exhibits or incorporated by reference therein; to matters of which judicial notice may be taken; or to documents upon the terms and effect of which the complaint "relies heavily" and which are, thus, rendered "integral" to the complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002); *see also Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230-31 (2d Cir. 2016).

### 2. Procedural Due Process Claim

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). A procedural due process claim requires the plaintiff to: "(1) identify a property [or liberty] right, (2) establish that governmental action with respect to that property [or liberty] right amounted to a deprivation, and (3) demonstrate that the deprivation occurred without due process." *Rosa R. v. Connelly*, 889 F.2d 435, 438 (2d Cir. 1989); *see also Progressive Credit Union v. City of New York*, 889 F.3d 40, 51 (2d Cir. 2018) ("To succeed on a procedural due process claim, a plaintiff must first identify a property right, second show that the state has deprived him or her of that right, and third show that the deprivation was effected without due process." (quotations, alterations and citation omitted)). Defendants challenge only the third element of plaintiff's procedural due process claim and contend that plaintiff was provided all the process that is constitutionally due before he was deprived of any property or liberty interest by his disenrollment from the Academy.

Generally, "[d]ue process requires that individuals have 'notice and opportunity for hearing appropriate to the nature of the case' prior to a deprivation of life, liberty, or property. *Rosa R.*,

889 F.2d at 438 (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S. Ct. 652, 94 L. Ed. 2d 865 (1950)); *see also Mathews*, 424 U.S. at 333, 96 S. Ct. 893 ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." (quotations and citation omitted)). "Notice must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Rosa R.*, 889 F.2d at 438 (quoting *Mullane*, 339 U.S. at 314, 70 S. Ct. 652).

"'[D]ue process,' . . . is not a technical conception with a fixed content unrelated to time, place and circumstances[;] [it] is flexible and calls for such procedural protections as the particular situation demands." *Mathews*, 424 U.S. at 334, 96 S. Ct. 893 (quotations and citations omitted). "[T]o determine in any given case what procedures due process requires, the court must carefully determine and balance the nature of the private interest affected and of the government interest involved, taking account of history and the precise circumstances surrounding the case at hand." *Wasson v. Trowbridge*, 382 F.2d 807, 811 (2d Cir. 1967); *see also Mathews*, 424 U.S. at 334, 96 S. Ct. 893 ("[R]esolution of the issue whether the administrative procedures provided . . . are constitutionally sufficient requires analysis of the governmental and private interests that are affected.")

In *Wasson*, the Second Circuit analyzed the governmental and private interests affected by a dismissal of a cadet from the USMMA and concluded, in pertinent part:

> "[D]ue process only requires for the dismissal of a Cadet from the Merchant Marine Academy that he be given a fair hearing at which he is apprised of the charges against him and permitted a defense. It would be most unwise, if not impossible, for this Court to spell out in detail the specific components of a fair hearing in the context of expulsion from the Academy without the benefit of findings by a District Court because Regulations which appear harsh in the abstract to Judges more attuned to adversary civilian trials may prove entirely reasonable within the confines of Academy life. For the guidance of the parties, however, the rudiments

of a fair hearing in broad outline are plain. The Cadet must be apprised of the specific charges against him. He must be given an adequate opportunity to present his defense both from the point of view of time and the use of witnesses and other evidence. We do not suggest, however, that the Cadet must be given this opportunity both when demerits are awarded and when dismissal is considered. The hearing may be procedurally informal and need not be adversarial."

*Id.*, 382 F.2d at 812; *see also Andrews v. Knowlton*, 509 F.2d 898, 905 (2d Cir. 1975) ("[B]efore a cadet can properly be dismissed or separated from his service academy, he must have a hearing, be apprised of the specific charges against him, and be given an adequate opportunity to present his defense both from the point of view of time and the use of witnesses and other evidence. A military proceeding conducted within these bounds of procedural due process would be proper and immune from constitutional infirmity."); *Hagopian v. Knowlton*, 470 F.2d 201, 211 (2d Cir. 1972), *overruled in part and on other grounds by Sampson v. Murray*, 415 U.S. 61, 94 S. Ct. 937, 39 L. Ed. 2d 166 (1974), (holding that due process requires a fair hearing "at some point before a cadet could be separated" from a service academy, and that at any "hearing at which Academy officials will determine whether or not a cadet will be expelled the cadet must be allowed to appear and present evidence, including witnesses, on his behalf."); *Crowley v. U.S. Merch. Marine Acad.*, 985 F. Supp. 292, 297 (E.D.N.Y. 1997) ("[I]n this Circuit the standard is clear: in military disenrollment proceedings such as [the plaintiff's], an individual must be given a full and fair hearing. [] In addition, the cadet must receive notice of the charges against him and a fair opportunity to present a defense. He also should be given the opportunity to appear, and to present statements, evidence and witnesses on his behalf." (quotations, alterations and citation omitted)).

Since plaintiff received notice of the Charges and the hearing; was afforded a full opportunity to present his case at the disciplinary hearing[8]; and had recourse to appeal the

---

[8] Plaintiff's conclusory assertion that he was deprived of the opportunity to properly defend himself because he was given only seven (7) days to prepare for the hearing, devoid of any factual allegations in support thereof, is insufficient to state a plausible procedural due process claim. Indeed, plaintiff does not allege, *inter alia*, that he was

Disenrollment Decision to the Maritime Administrator before the allegedly unconstitutional deprivation, *i.e.*, his disenrollment from the Academy, took effect, he cannot demonstrate that he was deprived of a property or liberty right without due process. *See, e.g. Doe*, 307 F. Supp. 3d at 156 (finding that the plaintiff failed to demonstrate a likelihood of success on his procedural due process claim where he "was given a fair hearing, notice of the charges against him, and the opportunity to defend himself."); *Tully v. Orr*, 608 F. Supp. 1222, 1226 (E.D.N.Y. 1985) (finding that the plaintiff received all the process constitutionally due him where "[h]e was afforded the opportunity to present evidence and cross-examine witnesses, and to consult with counsel [or an advisor] outside the hearing. The [United States Air Force] Academy is required to do no more."); *J.E. ex rel. Edwards*, 898 F. Supp. 2d at 544 (finding that the procedures afforded to the infant plaintiffs in connection with their suspensions satisfied their procedural due process rights insofar as they were "provided with (i) timely notice of the pending charges against them, (ii) a full

---

unable to obtain any witnesses or evidence within the seven (7)-day period, or that he ever sought a continuance or otherwise objected to the seven (7)-day period. *Cf. Wasson*, 382 F.2d at 813 ("Wasson alleged that he was denied a continuance in order to obtain favorable witnesses and that he was given only three days in which to prepare for the hearing and that the effect of this ruling deprived him of the opportunity to defend himself. There are many reasons why the Academy could properly deny a request for a continuance but Wasson is entitled to attempt to prove that none of these reasons applied and that he was thereby seriously prejudiced.") Similarly, plaintiff's conclusory assertion of bias and/or impartiality on the part of the Superintendent, absent any factual allegations from which such bias and/or impartiality may reasonably be inferred, *e.g.* the Superintendent's prior involvement in the investigation, any remark by the Superintendent suggesting "a pre-conceived notion about plaintiff's responsibility for (or propensity to engage in) sexual misconduct," etc., *Doe v. U.S. Merch. Marine Acad.*, 307 F. Supp. 3d 121, 153 (E.D.N.Y. 2018), is insufficient to state a plausible procedural due process claim, particularly given the "strong presumption that the Superintendent is impartial[.]" *Id.* (quotations, alterations and citation omitted).

Plaintiff's challenge to an evidentiary ruling, *i.e.*, defendants calling E.C. as a witness at the hearing, purportedly in violation of the Superintendent's Instruction, is insufficient because, *inter alia*, "procedural due process does not require rigid adherence to technical evidentiary rules in administrative hearings, as long as the evidence introduced is reliable." *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of Am., AFL-CIO*, 941 F.2d 1292, 1298 (2d Cir. 1991); *see, e.g. J.E. ex rel. Edwards v. Center Moriches Union Free Sch. Dist.*, 898 F. Supp. 2d 516, 544 (E.D.N.Y. 2012), *appeal dismissed*, 553 F. App'x 68 (2d Cir. Jan. 31, 2014). In any event, the Superintendent's Instruction provides, in pertinent part, that "[t]hroughout the disciplinary proceedings, the accused and the victim will have . . . *[t]he right to exclude prior sexual history* . . . from admittance in Phase I (determination stage) of the disciplinary process." (Compl., Ex. 4 at 5, ¶ 6(f)(v)). Plaintiff does not contend that he ever sought to exclude, or otherwise objected to, E.C.'s testimony at or prior to Phase I of the hearing. (See Compl., Ex. 1 at 2).

opportunity to present their case at a formal disciplinary hearing prior to the decision to suspend each of them, [and] (iii) the ability to challenge that suspension on appeal[.]") Moreover, plaintiff cannot state a procedural due process claim where he failed to avail himself of the administrative remedies available to him by withdrawing his timely appeal of the Disenrollment Decision. *See, e.g. Dotson v. Griesa*, 398 F.3d 156, 161 n. 2 (2d Cir. 2005) (finding that the plaintiff could not complain that his termination was in violation of due process because he "failed to avail himself of the very administrative procedures he attacks as inadequate."); *Ali v. Reno*, 22 F.3d 442, 449 (2d Cir. 1994) ("Clearly, the availability of recourse to a constitutionally sufficient administrative procedure satisfies due process requirements if the complainant merely declines or fails to take advantage of the administrative procedure." (quotations, alterations and citation omitted)); *Aronson v. Hall*, 707 F.2d 693, 694 (2d Cir. 1983) (affirming the dismissal of the plaintiff's procedural due process claim because he "chose[] not to pursue available administrative review," *i.e.*, to appear before the Board for Psychology or to appeal its decision to the Board of Regents, and, thus, was "hardly in a position to claim that such review denied him due process.") Accordingly, the branch of defendants' motion seeking judgment on the pleadings dismissing plaintiff's procedural due process claims pursuant to Rule 12(c) of the Federal Rules of Civil Procedure is granted and plaintiff's procedural due process claims are dismissed in their entirety with prejudice for failure to state a claim for relief.

### 3. Substantive Due Process Claim

"Substantive due process rights safeguard persons against the government's exercise of power without any reasonable justification in the service of a legitimate governmental objective." *Southerland v. City of New York*, 680 F.3d 127, 151 (2d Cir. 2012) (quotations and citation

omitted); *accord Lombardi v. Whitman*, 485 F.3d 73, 78-79 (2d Cir. 2007). "For a substantive due process claim to survive a Rule 12(b)(6) [or Rule 12(c)] dismissal motion, it must allege governmental conduct that 'is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Velez v. Levy*, 401 F.3d 75, 93 (2d Cir. 2005) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n. 8, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998), *abrogated on other grounds by Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 150 L.Ed.2d 272 (2001), *receded from Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009)); *accord Southerland*, 680 F.3d at 151. "[C]onduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *Benzman v. Whitman*, 523 F.3d 119, 127 (2d Cir. 2008) (brackets in original) (quoting *Lewis*, 523 U.S. at 849, 118 S. Ct. 1708); *see also Velez*, 401 F.3d at 94 ("[M]alicious and sadistic abuses of power by government officials, intended to oppress or to cause injury and designed for no legitimate government purpose, unquestionably shock the conscience." (quotations and citation omitted)).

A student's substantive due process rights will only be implicated "upon a showing that an administrator's decision to expel the student was 'arbitrary or irrational or motivated by bad faith.'" *DeFabio v. East Hampton Union Free School Dist.*, 623 F.3d 71, 82 (2d Cir. 2010) (quoting *Rosa R.*, 889 F.2d at 439); *see also Doe*, 307 F. Supp. 3d at 156 (holding that in order to satisfy the substantive due process standard "that the government action was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience[,] . . . a plaintiff must show the government decision it challenges was arbitrary or irrational or motivated by bad faith." (quotations and citations omitted)). "Substantive due process standards are violated only by

conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority." *Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999).

Plaintiff's conclusory allegations, (*see* Compl., 50, 58-62), are either rooted in the alleged procedural infirmities set forth above with respect to his procedural due process claim, or are unsupported by any factual allegations and, thus, "fall far short of the standard for substantive due process claims." *Doe*, 307 F. Supp. 3d at 157; *see generally Velez*, 401 F.3d at 94 ("What is allegedly shocking about what the defendants' did is either their intent to violate plaintiff's fundamental First Amendment rights, or their motive to deprive her of liberty without procedural due process. In other words, what would serve to raise defendant's actions beyond the wrongful to the unconscionable and shocking are facts which, if proven, would constitute, in themselves, specific constitutional violations. And we have held that where a specific constitutional provision prohibits government action, plaintiffs seeking redress for that prohibited conduct . . . cannot make reference to the broad notion of substantive due process.") In any event, "nothing in the complaint shocks the conscience or suggests a gross abuse of governmental authority[,]" *Kuck v. Danaher*, 600 F.3d 159, 167 (2d Cir. 2010) (quotations and citation omitted), particularly since plaintiff had recourse to an administrative remedy to challenge the Disenrollment Decision, of which he chose not to avail himself. *Cf. Id.* ("[S]ubstantive due process does not entitle federal courts to examine every alleged violation of state law, especially ones that, while perhaps vexatious, are more routine than egregious. That is especially so because, under Connecticut law, Kuck and other class members have recourse to state forums to challenge the merits of [the defendants'] decisions.") Even if defendants' decisions to disenroll plaintiff and to refuse to allow him to reinstate his previously withdrawn appeal or to file a late appeal were improper, (*see* Compl. ¶¶ 50, 58), actions that are merely "incorrect" or "ill-advised" are insufficient to state a substantive due process

claims. *See Catanzaro v. Weiden*, 188 F.3d 56, 64 (2d Cir. 1999) ("To succeed on their substantive due process claim, Plaintiffs–Appellants must show that the government action was arbitrary, conscience-shocking, or oppressive in a constitutional sense, and not merely incorrect or ill-advised." (quotations and citation omitted)); *e.g. Dunbar v. Hamden Bd. of Educ.*, 267 F. Supp. 2d 178, 183 (D. Conn. 2003). Accordingly, the branch of defendants' motion seeking judgment on the pleadings dismissing plaintiff's substantive due process claims pursuant to Rule 12(c) of the Federal Rules of Civil Procedure is granted and plaintiff's substantive due process claims are dismissed in their entirety with prejudice for failure to state a claim for relief.

D.  Discovery

"In a suit under the APA, discovery rights are significantly limited. The respondent agency must turn over the whole administrative record as it existed at the time of the challenged agency action, but normally no more." *Sharkey*, 541 F.3d at 92 n. 15; *see also Natural Res. Def. Council, Inc. v. Muszynski*, 268 F.3d 91, 96-97 (2d Cir. 2001) (holding that judicial review under the APA "is narrow, limited to examining the administrative record to determine whether the agency decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." (quotations, alterations and citation omitted)); *Comprehensive Cmty. Dev. Corp. v. Sebelius ("CCDC")*, 890 F. Supp. 2d 305, 308 (S.D.N.Y. 2012) ("Under the APA, a court that reviews agency action to determine if it was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,' 5 U.S.C. § 706(2)(A), is to 'review the whole record or those parts of its cited by a party.' *Id.* § 706. Courts have consistently held that the term 'the whole record' refers to the full record that was before the agency, meaning the agency decision-maker, at the time of the decision."); *Tummino v. Von Eschenbach*, 427 F. Supp. 2d 212, 230 (E.D.N.Y.

2006) ("Generally, a court reviewing an agency decision is confined to the administrative record compiled by the agency when it made the decision." (quoting *Nat'l Audubon Soc'y v. Hoffman*, 132 F.3d 7, 14 (2d Cir. 1997))). "[D]eference is due to the agency's judgment as to what constitutes the whole administrative record . . . [and] an agency's designation of the administrative record is generally afforded a presumption of regularity." *CCDC*, 890 F. Supp. 2d at 309 (quotations and citation omitted). Accordingly, "[s]upplementation of the record as designated by the agency is ... the exception, not the rule." *Id.*; *see also Ali v. Pompeo*, No. 16-cv-3691, 2018 WL 2058152, at * 4 (E.D.N.Y. May 2, 2018) (holding that since "[t]he task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the reviewing court[,] . . . the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." (quotations and citations omitted)).

"Requests by a party to put materials before the Court that are outside the administrative record filed by the agency fall into two distinct categories[:] . . . [1] the party may seek to show that materials exist that were actually considered by the agency decision-makers but are not in the record as filed[;] . . . [or] [2] "a party may ask that the court consider extra-record evidence, *i.e.*, evidence that was not necessarily considered by the agency." *CCDC*, 890 F. Supp. 2d at 309. Only the latter category is relevant on this motion, as defendants have not yet filed the administrative record in this case.

"[A] court may review extra-record evidence only where 'there has been a strong showing in support of a claim of bad faith or improper behavior on the part of the agency decision-maker or where the absence of formal administrative findings makes such investigation necessary in order to determine the reasons for the agency's choice.'" *CCDC*, 890 F.Supp.2d at 309 (quoting

*Hoffman*, 132 F.3d at 14); *accord United States v. Int'l Bhd. of Teamsters*, No. 88-cv-4486, 2007 WL 4563420, at * 2 (S.D.N.Y. Dec. 27, 2007), *aff'd sub nom Gillen v. Int'l Bhd. of Teamsters*, 341 F. App'x 728 (2d Cir. Aug. 14, 2009) (summary order); *Ali*, 2018 WL 2058152, at * 4. Since "[a] court will not ascribe [] nefarious motives to agency action as a general matter[,] . . . the bad faith exception to the record rule requires plaintiff to make a strong preliminary showing of bad faith or improper behavior by the agency." *Ali*, 2018 WL 2058152, at *5 (quotations, alterations and citations omitted); *see also Tummino*, 427 F. Supp. 2d at 230 ("[W]here a strong preliminary showing of bad faith or improper behavior is made, agency officials can be required to give testimony to explain the reasons for their actions." (quotations and citation omitted)). "Naked assertions of bad faith are insufficient[;] [a] party must make a significant showing-- variously described as a strong, substantial, or prima facie showing-- that it will find material in the agency's possession indicative of bad faith." *Ali*, 2018 WL 2058152, at *5 (quotations, alterations and citation omitted). "Allegations of bad faith must be based on hard facts[;] [e]vidence, and not merely counsel's argument, must support the showing." *Id.* at *6 (quotations, alterations and citations omitted).

Initially, to the extent plaintiff claims that "extra-record discovery is needed to review the denial of [his] right to an appeal, and the surrounding circumstances, including the extra-record conduct of . . . [Admiral] Helis," (Plf. Opp. at 12), since plaintiff's claim relating to the purported denial of his right to appeal is not subject to judicial review, as set forth above, such discovery is not warranted. With respect to plaintiff's APA claim relating to the Disenrollment Decision, plaintiff has not presented sufficient facts to support a showing of bad faith or improper behavior on the part of Admiral Helis, Kreitzer, the case investigator, or any other agency official with respect thereto. Accordingly, the branch of defendants' motion seeking to stay discovery in this

action is granted to the extent that discovery is stayed *nunc pro tunc* pending defendants' filing of the administrative record. Upon submission of the administrative record, plaintiff may seek discovery outside the administrative record upon showing either that the administrative record is incomplete or that extra-record evidence is otherwise appropriate under the standard set forth above, *provided*, that plaintiff file a motion seeking any such discovery **within thirty (30) days after the administrative record is filed** *or plaintiff will be deemed to have waived his right to any discovery outside of the administrative record*.

IV.     Conclusion

For the reasons set forth above, (a) the branch of defendants' motion seeking dismissal of plaintiff's APA claims pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure is granted to the extent that plaintiff's APA claim seeking judicial review of defendants' refusal to allow him to reinstate his previously withdrawn appeal or to file a late appeal of the Disenrollment Decision is dismissed in its entirety for lack of subject matter jurisdiction, and that branch of defendants' motion is otherwise denied; (b) the branch of defendants' motion seeking judgment on the pleadings dismissing plaintiff's Fifth Amendment procedural and substantive due process claims pursuant to Rule 12(c) of the Federal Rules of Civil Procedure is granted and plaintiff's procedural and substantive due process claims are dismissed in their entirety with prejudice for failure to state a claim for relief; and (c) the branch of defendants' motion seeking to stay discovery in this action is granted to the extent that discovery is stayed *nunc pro tunc* pending defendants' filing of the administrative record and, upon submission of the administrative record, plaintiff may seek discovery outside the administrative record by showing either that the administrative record is incomplete or that extra-record evidence is otherwise appropriate under the standard set forth

above, *provided*, that plaintiff file a motion seeking any such discovery **within thirty (30) days after the administrative record is filed** *or he will be deemed to have waived his right to any discovery outside of the administrative record*.  For the sake of clarity, only plaintiff's APA claim seeking judicial review of the Disenrollment Decision remains in this case.

SO ORDERED.

_____/s/_____
Sandra J. Feuerstein
United States District Judge

Dated:  November 20, 2018
       Central Islip, New York